**2026 UT App 126**

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF E.D.,
A PERSON UNDER EIGHTEEN YEARS OF AGE.

J.J.G.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Per Curiam Opinion
No. 20260355-CA
Filed August 6, 2026

Third District Juvenile Court, Salt Lake Department
The Honorable Susan Eisenman
No. 1257169

Emily Adams and Allison Herr,
Attorneys for Appellant

Derek E. Brown and John M. Peterson,
Attorneys for Appellee

Martha Pierce, Alisha Giles, and Heath Haacke,
Guardians ad Litem

Before JUDGES DAVID N. MORTENSEN, RYAN D. TENNEY, and
JOHN D. LUTHY.

PER CURIAM:

¶1     E.D. (Child) is the thirteen-year-old son of J.J.G. (Father). Child was removed from his mother's (Mother) care for neglect. Although Father had paid child support throughout Child's life, Father had no contact with Child during his childhood, pursuant to an agreement with Mother. The juvenile court adjudicated Child dependent as to Father. On appeal, we are asked to examine

whether the juvenile court erred in determining that Father's lack of a relationship with Child made him unable to care for Child's reasonable needs upon his removal from Mother, rendering Child dependent due to a lack of proper parental care. Because we conclude that this lack of relationship did not make Father incapable of caring for Child's reasonable needs, we reverse the juvenile court's dependency adjudication.

## BACKGROUND

¶2 When Child was born, Father and Mother agreed that Father would pay child support but would have no further involvement in Child's life. For twelve years, Father consistently paid child support but had no contact with Child, who believed that Mother's boyfriend, the father of Child's four siblings, was his father.

¶3 In February 2026, Child and his four siblings were removed from Mother's care, and they were eventually adjudicated neglected as to Mother. Mother, who worked nights, had been consistently sleeping during the day without obtaining childcare for her two-year-old and four-year-old children, who were at home with her.

¶4 The Utah Division of Child and Family Services (DCFS) did not learn of Father's existence until two days after Child was removed. As soon as Father received notice of the removal, he began participating in the proceedings. He expressed his desire to care for Child and to establish a relationship with him.

¶5 Father entered rule 34(e) admissions, stipulating that DCFS was unaware of Father prior to Child's removal, that Child met Father for the first time at the shelter hearing, that Father had agreed with Mother not to be involved in Child's life except to pay child support, that he had been paying child support, and that he

had been spending time with Child and working on their relationship since the shelter hearing.

¶6    The juvenile court found Child dependent as to Father. The court first found that "there was a dependency at that point in which [Child] was removed from the custodial parent . . . , and [DCFS] hadn't identified the noncustodial parent." The court further explained that because Father had not previously cared for Child, the court could not have placed Child with Father "right off the bat" and would have first needed to "check[] him out" to make sure "he was okay." The court contrasted this with a situation where parents have joint custody and the child could "just go" with the other parent. The court concluded that this situation "fits the definition of a dependency."

ANALYSIS

¶7    Father asks us to examine whether the juvenile court erred in determining Child dependent as to Father. "When the facts are stipulated, we review the conclusions drawn by the juvenile court for correctness." *In re K.T.*, 2023 UT App 5, ¶ 7, 524 P.3d 1003 (cleaned up). Thus, we must determine whether the stipulated facts establish, as a matter of law, that Child was dependent as to Father.

¶8    A child is "[d]ependent" when the child is "without proper care through no fault of the child's parent, guardian, or custodian." Utah Code § 80-1-102(21). A child is "without proper care," for purposes of this definition, when the child "has no parent or guardian at all or where the child's parent or guardian— through no fault of their own—is unable to provide the level of care and attention that the child reasonably needs under the circumstances." *In re B.D.*, 2024 UT App 104, ¶ 44, 556 P.3d 86 (cleaned up). If a "parent stands ready, willing, and able to provide the necessary care" a child needs, then the child is not dependent. *Id.* ¶ 47.

¶9 Father asserts that the stipulated facts do not establish that he would have been unable to provide reasonable care for Child if he had been informed of the need for care. He points out that there are no allegations that he is "unfit, incarcerated, lacks safe housing, or is otherwise unavailable to meet Child's needs." He "lived in the same city as Mother, had no criminal convictions, and had been consistently paying child support to Mother for over 12 years." Additionally, Father's actions after learning of the removal show that he was ready, willing, and able to care for Child—he appeared at the shelter hearing and immediately began working to establish a relationship with Child.

¶10 The State and the guardians ad litem (GAL), on the other hand, assert that Father was not able to provide the necessary care for Child because he had never provided parental care to Child before and had no relationship with Child. They also observe that Child could not have immediately been placed with Father because the court would have first needed to examine whether placing Child in Father's custody would "be unsafe or otherwise detrimental," which requires some degree of investigation, and they assert that this reality also supports a finding of dependency. *See* Utah Code § 80-3-302(2).

¶11 We agree with Father and conclude that the juvenile court erred in determining that "there was a dependency at that point in which [Child] was removed from the custodial parent . . . and [DCFS] hadn't identified the noncustodial parent." In *In re P.M.*, 2025 UT App 155, 581 P.3d 159, we held that when a parent is "unaware of [a child's] need for care" and the child's "needs [have] otherwise been met," the parent's "temporary absence alone" does not demonstrate that the parent is unable to provide the care the child needs. *Id.* ¶ 15. Although in one sense, Father's lack of an ongoing relationship with Child qualifies as more than a temporary absence, the salient point from *In re P.M.* is that "a child is not 'without proper care' in an unforeseen and emergency circumstance unless a parent who is informed of the child's need

is unable to provide reasonable care for the child in a timely way." *Id.* Thus, for a parent to be only temporarily absent as contemplated by *In re P.M.*, the parent does not need to have an ongoing relationship with the child. Instead, a parent is temporarily absent under *In re P.M.* when the parent's unawareness and corresponding lack of response to the unforeseen emergency circumstance is short-lived. Accordingly, the court's focus here should have been on whether Father was willing and able to provide proper parental care in a timely way once he was informed two days after Child's removal from Mother's custody of the need for care, not on whether DCFS was previously aware of Father. *See id.* There is nothing to suggest that Father had any reason to believe Child's needs were not being met by Mother, and he began participating in the case upon being informed—in relatively short order—of the removal.

¶12 We also disagree with the State and GAL's position that a lack of a relationship with Child rendered Father unable to provide Child with "the level of care and attention" he "reasonably need[ed] under the circumstances." *In re B.D.*, 2024 UT App 104, ¶ 44. There is nothing in the record to suggest that Child had any unusual needs. Having been removed from Mother's care, therefore, Child needed someone who could provide him with appropriate supervision and the necessities of life. Although it would certainly be ideal for children removed from their parents to be cared for by someone they know and trust, there are many situations where that is not possible. If children can have their needs met while being placed in foster care with strangers upon removal from their parents, there is no reason to conclude that Father was categorically *unable* to care for Child's reasonable needs based solely on his lack of an ongoing relationship with Child. And Father's quick action in attempting to build a relationship with Child signaled that Father was willing and able to provide Child with at least some level of attention.

¶13 The fact that the court may have needed to do some due diligence regarding Father before turning Child over to him also does not mean that Father was unable to provide proper care for Child. The juvenile court always has to assess whether it would "be unsafe or otherwise detrimental" to place a child in the care of "another parent with whom the child was not residing at the time the events or conditions that brought the child within the juvenile court's jurisdiction occurred." Utah Code § 80-3-302(2). This requires, "at a minimum," that DCFS "visit the parent's home," conduct a "criminal background check," and "check the Management Information System for any previous reports of abuse or neglect received by the division regarding the parent." *Id.* § 80-3-302(2)(c)(ii). If the need to comply with this requirement before turning a child over to the custody of the other parent rendered a parent unable to provide proper parental care, then all noncustodial parents would be subject to dependency findings if their children were removed from the custodial parents. Furthermore, the fact that various circumstances prevent a parent from immediately taking custody of a child "in an unforeseen and emergency circumstance" does not render the child without proper parental care, so long as the parent is able "to provide reasonable care for the child in a timely way" upon being informed of the removal. *In re P.M.*, 2025 UT App 155, ¶ 15. A noncustodial parent who can be located and contacted in relatively short order and who is ready, willing, and able to take custody as soon as the court makes the statutorily required findings is able to provide reasonable care in a timely way.

¶14 Because Father's initial lack of awareness of Child's removal and his lack of a relationship with Child do not, without more, indicate that Child lacked proper parental care, the juvenile court erred in adjudicating Child dependent as to Father. Accordingly, we reverse the juvenile court's adjudication decision and remand this matter for further proceedings.

———